UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:12-CV-00652-TBR

YVETTE K. ALLEN, *et al.*                                              Plaintiffs

v.

JOSH THOMPSON, *et al.*                                              Defendants

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants Josh Thompson and Thomas
Grace's Motion for Summary Judgment.  (Docket No. 53.)  Plaintiffs Cherosco Brewer
and Yvette Allen have responded, (Docket No. 56), and Defendants have replied,
(Docket No. 59).  This matter now is ripe for adjudication.  For the reasons that follow,
Defendants' Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This action arises from the Defendants' alleged violation of Plaintiffs'
constitutional rights during a traffic stop on September 21, 2012.  Defendant Thomas
Grace, an officer with the Louisville Metro Police Department (LMPD), pulled Plaintiff
Cherosco Brewer over just after 4 p.m.  According to Brewer, he had spent about twenty
minutes at his aunt's home prior to the stop and was on his way to work.  Brewer was
driving a rented vehicle with tinted windows and an Indiana license plate.  Defendant
Josh Thompson, another LMPD officer, arrived shortly after the stop began.

Grace approached the vehicle on the driver side and asked Brewer for his
license, registration, and proof of insurance, which Brewer provided.  Grace returned to

his car and, upon running Brewer's information, learned that Brewer recently had been charged with trafficking cocaine.

Grace ordered Brewer out of the vehicle and did not immediately answer his question of why he had been stopped. Grace performed a *Terry* pat down. Brewer told Grace to stop searching further, but Grace reached into Brewer's pockets and removed loose money totaling between $1,500 and $2,000. Grace asked Brewer where the money came from, and Brewer replied that it was from his work paychecks. Grace instructed Brewer to sit on the curb in front of Thompson near the rear passenger-side wheel of Brewer's vehicle. At some point, Brewer called Plaintiff Yvette Allen, his fiancée, and told her what was happening.

Grace radioed for a K-9 unit. He then asked Brewer if he could search the vehicle, and Brewer said "No." According to Plaintiffs, Grace entered Brewer's vehicle three times. First, Grace entered the car, claiming to prepare the vehicle for the K-9 unit; however, Grace did not turn on the ignition, roll the windows up or down, or turn on the air conditioning. Second, Grace again opened the driver-side door, reached down his side and grabbed something, and then leaned into the vehicle and reached under the driver's seat. Third, Grace again opened the driver-side door, leaned in, and, according to Brewer, retrieved something from under the driver's seat.

About thirty minutes after the traffic stop began, Grace learned that the K-9 unit was delayed in traffic. At that point, he decided to call off the K-9 unit and terminate the stop. Around that same time, Allen arrived and parked her vehicle one or two car lengths in front of Brewer's vehicle. Brewer told her not to come any closer and to use

her cell phone to record a video of the Defendants' actions.    Allen did not proceed closer than one and a half car lengths away from Brewer's vehicle.

Grace approached Allen on the sidewalk, grabbed her arm, and repeatedly told her to give him her phone or go to jail.  Allen refused.  Grace can be heard on the audio recording telling Allen, "Either give it to me or I'm going to take it."[1]    When Allen said she didn't do anything wrong and continued to refuse to give Grace her phone, Allen says Grace twisted her arm, threw her into the fence along the sidewalk, and forcefully pulled the phone away from her.   During these events, Brewer was not permitted to get up off the curb.

Grace took Allen's phone back to his patrol car.  The dash cam video shows that the Defendants initially permitted Allen to follow Grace back to his patrol car. Moments later, Grace can be heard telling Allen that she would be arrested if she did not get back in her car and leave.  Shortly thereafter, Grace returned the cash removed from Brewer's pocket and instructed Brewer to get back in his vehicle.  Grace then returned to his patrol car, turned off the audio on his in-car recording device in violation of LMPD policies and procedures, and contacted his sergeant, who instructed him to return the phone to Allen.   Before returning the phone, Grace searched it, found the video Allen had made, and deleted it.  Grace then had Thompson return the phone to Allen. Thompson asked Allen if she wanted to be arrested or wanted her phone back.  Allen asked what she would be arrested for, but Thompson did not answer and simply returned her phone.  Grace issued Brewer a citation for excessive window tint and no proof of insurance. The entire stop lasted approximately fifty minutes.

---

[1] As an attachment to their Motion for Summary Judgment, Defendants have submitted a video disc containing the audio recordings and dash cam video from the traffic stop.  (*See* Docket No. 53-7.)  The Court has reviewed the content of that disc in considering Defendants' Motion.

After the stop concluded, Brewer and Allen immediately went to LMPD to file a complaint against the officers. Allen later went to the hospital for injuries sustained during the traffic stop, where she received pain medication for bruises on her arms and strain to her right shoulder.

The LMPD's internal investigation found that Grace had violated LMPD procedures regarding searches, seizures, and use of force. During his deposition, Grace admitted to lying during the LMPD's investigation out of embarrassment and fear. (Docket No. 56-3, at 73.)

Defendants' version of the facts differs in several key regards. First, they maintain that Grace spotted a vehicle with an out-of-state license plate and saw its driver enter a residence where other officers had received information that narcotics were being sold. According to Grace, the driver entered the residence for only a short amount of time. Grace briefly followed the vehicle and then pulled it over for excessive window tint. After Grace asked Brewer to exit the vehicle, he asked Brewer if he could search Brewer's person. Grace claims that Brewer impliedly consented by lifting his arms and turning to place his hands on the trunk. During the pat down, Grace felt a lump in Brewer's pocket and recognized it as a large wad of cash. Based on Brewer's recent criminal history, his visit to the house, and the large wad of cash, Grace radioed for a K-9 unit. The windows in the car were originally rolled up, save for the front driver-side window, which Grace sought to roll up. To prepare for the K-9 unit, Grace opened Brewer's car door, leaned in, turned the key, and raised the driver-side window. Grace maintains that individuals from the K-9 unit had previously instructed him to prepare a vehicle by rolling up the windows but cracking one.

Around the time that Grace called off the K-9 unit, Allen arrived and began recording the Defendants' actions from a position they considered unsafe for the purposes of the traffic stop. Grace approached Allen and asked for the phone. When she refused, he took hold of her arm. Grace told her that he did not want to hurt her. When she continued to refuse, Grace took the phone from her. According to Grace, he entered the vehicle a second and final time to do a protective *Terry* sweep before Brewer reentered the vehicle. Grace then returned to his patrol car, turned off the audio on his microphone, and called his sergeant, who told him to return the phone. Before doing so, Grace deleted the video "out of fear" upon learning that taking the phone was not allowed. (*See* Docket No. 56-3, at 64-65.) Grace acknowledged that he did not perform his job correctly with regard to taking Allen's phone and turning his microphone off. (Docket No. 56-3, at 65-66.)

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette*

*v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

## DISCUSSION

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, claiming various violations of their constitutional rights.[2] Specifically, Plaintiff Brewer asserts two claims for violations of his Fourth Amendment rights: (1) that Grace and Thompson unlawfully seized and detained him, and (2) that Grace unreasonably searched his vehicle. (Docket No. 56, at 10.) Plaintiff Allen also asserts two Fourth Amendment claims: (1) that Grace unlawfully seized her cell phone and deleted the video therefrom, and (2) that Grace used excessive force against her. (Docket No. 56, at 10.)

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the

---

[2] In their Amended Complaint, Brewer frames his first claim as one for unlawful arrest under the Fourth Amendment. (Docket No. 51, at 5.) In responding to Defendants' instant Motion, Brewer refines this claim as one for unlawful seizure and detention under the Fourth Amendment. (Docket No. 56, at 10.) Allen, in Plaintiffs' Amended Complaint, asserts her unreasonable seizure claim under the First and Fourth Amendments, and her excessive force claim under the First, Fourth, and Fourteenth Amendments. (Docket No. 51, at 6.) In Plaintiffs' Response, Allen clarifies that both of her § 1983 claims are brought under the Fourth Amendment. (Docket No. 56, at 10.) Thus, because it is clear that each of the Plaintiffs' claims is being brought under the Fourth Amendment, the Court will focus its discussion accordingly.

Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1998)). The parties do not dispute the second element. Because Defendants assert they are entitled to qualified immunity, the Court first will determine whether Defendants' actions were unconstitutional before turning to whether either Defendant is entitled to qualified immunity for any such violation.

## I. Brewer's Fourth Amendment Claims

Brewer asserts two § 1983 claims: (1) unlawful seizure and detention against Grace and Thompson, and (2) unreasonable search of his vehicle against Grace.

### A. Seizure and Detention of Brewer

"Stopping and detaining a motorist constitute[s] a 'seizure' within the meaning of the Fourth Amendment." *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (alteration in original) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)) (internal quotation marks omitted). In order for Grace's initial traffic stop to be valid, Grace must have had probable cause to believe that a civil traffic violation had occurred. *Id.* (citing *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)). Probable cause exists "where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *United States v. Hughes*, 606 F.3d 311, 320 (6th Cir. 2010) (quoting *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005)).

Grace stopped Brewer based on his observation of the vehicle and his assessment that, based on his personal and professional experience, the windows of the vehicle were excessively tinted in violation of Kentucky law. Although Brewer

presents a thoughtful argument challenging Grace's basis for believing that the tinting was excessive, the Court is satisfied that Grace had probable cause and that the initial traffic stop was not improper. *See id.* ("Having probable cause is not the same thing as being absolutely certain; it is possible . . . for an officer to have probable cause for a stop even where the individual being stopped has not actually violated any law.").

Generally, a traffic stop must last no longer than is necessary to effectuate the purpose of the stop. *See United States v. Everett*, 603 F.3d 484, 488 (6th Cir. 2010). Therefore, the traffic stop must have lasted no longer than necessary to investigate the vehicle's excessively tinted windows. Any subsequent detention after the initial stop must be "reasonably related in scope to circumstances justifying the initial interference." *Davis*, 430 F.3d at 353 (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)) (internal quotation marks omitted). There is no question that the fifty-minute duration exceeded what was required to investigate Brewer's windows and issue a citation. Therefore, Defendants must have had a sufficient justification for extending the stop beyond its original scope.

Police officers can extend a stop beyond the scope of what was originally permissible if events during the stop cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot. *See Davis*, 430 F.3d at 353−54; *see also Bell*, 555 F.3d at 539 ("To detain the motorist any longer than is reasonably necessary to issue the traffic citation, . . . the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct."). "Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist

after a traffic stop." *Bell*, 555 F.3d at 540 (quoting *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001)). "Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person . . . of criminal activity." *Id.* (quoting *Smith*, 263 F.3d at 588) (internal quotation marks omitted). The reasonableness of an investigatory stop is evaluated under the totality of the circumstances. *See id.* A court must examine individual factors taken as a whole and determine whether they "give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *Smith*, 263 F.3d at 588 (citing *United States v. Sokolow*, 490 U.S. 1, 9 (1989)). Police officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Martin*, 289 F.3d 392, 398 (6th Cir. 2002).

Here, Grace argues that he had reasonable suspicion that Brewer was engaged in other criminal activity based on several factors[3]: (1) Brewer was stopped in a high crime area; (2) Brewer's vehicle had just visited a house where narcotics activity was suspected; (3) Brewer had entered the house only a short time; (4) Brewer's vehicle had excessive window tint and out-of-state tags; (5) Brewer was discovered to have a lengthy criminal record, including a recent charge for cocaine trafficking; and (6) during

---

[3] Grace also argues that the fact that Brewer was driving a rented vehicle should be considered as part of the reasonable-suspicion calculus. (Docket No. 53-1, at 16-17.) However, Grace testified in his deposition that he was unaware at the time of the stop that the vehicle was a rental:

> Q.   . . . Were you aware at the time that you stopped Mr. Brewer that the car was a rental?
> A.   No, ma'am.
> Q.   Okay. Are you now aware that the car was a rental?
> A.   Only if that's what you're telling me it was.

(Docket No. 56-3, at 28-29.)

the pat down, Grace found between $1,500 and $2,000 cash in Brewer's possession, which Grace claims Brewer could not adequately explain. Brewer, on the other hand, contends that the area was not a high crime area and that he was in fact visiting his aunt's house. Brewer argues that Grace exceeded the scope of the *Terry* frisk by reaching in his pocket without consent. Brewer also maintains that he adequately explained the money by telling Grace that the money came from work.

First, mere presence in a high crime area, standing alone, is insufficient to support reasonable suspicion, although it can be a contributing factor. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Second, in viewing the facts in the light most favorable to the Plaintiffs, Brewer's presence at his aunt's house does not contribute to Grace's reasonable suspicion unless that house is the same house that Grace took it upon himself to surveil for narcotics activity. Grace, however, testified that he could not recall the specific house where he saw Brewer's vehicle or even the street where that house was located. (*See* Docket No. 56-3, at 19-20.) Third, Brewer contends that he was present in the residence for about twenty minutes, while Grace contends that the amount of time was much shorter. A twenty-minute visit to a residence does not strike the Court as inherently suspect. Finally, the excessive window tint and out-of-state license plate could contribute to reasonable suspicion, although Grace admitted in his deposition that seeing an Indiana license plate was not unusual in the area where he saw Brewer. (*See* Docket No. 56-3, at 24-25.) Therefore, prior to the stop, Grace at best saw a vehicle with excessively tinted windows and an Indiana license plate at a residence in a high crime area. Without more, these facts do not give rise to reasonable suspicion.

During the traffic stop, however, Grace discovered that Brewer had a lengthy criminal record, including firearms offenses and a recent charge for cocaine trafficking. Brewer's criminal record alone is not enough to create reasonable suspicion. *See Joshua v. DeWitt*, 341 F.3d 430, 446 (6th Cir. 2003). But a record is certainly a relevant factor and may "cast a suspicious light on other seemingly innocent behavior," particularly with regard to present suspected drug activity if the prior offense was drug-related. *United States v. Stepp*, 680 F.3d 651, 667 (6th Cir. 2012) (citation omitted). When Grace performed a pat down, he discovered a substantial amount of cash in Brewer's pants pocket. Grace avers that, based on his experience, he recognized the wad of cash during the pat down and believed it was connected with a crime. The only explanation Grace received was that Brewer earned the money at his job. Brewer was not able to state how much money he had in cash in his pocket, nor did he offer any additional information.

Considering the totality of the circumstances—particularly the poststop factors—the Court finds that the Defendants had reasonable suspicion, based on articulable facts, to briefly detain Brewer on suspected drug activity.

Having found reasonable suspicion, the Court now must determine whether the detention was reasonable in time and scope. Brewer was detained for approximately fifty minutes. Defendants correctly point out that there is no *per se* rule regarding a reasonable time for a *Terry* stop. *See Davis*, 430 F.3d at 354. However, the police must have "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 687 (1985). Grace states that he called off the

stop when the K-9 unit reported it would not be able to arrive in a timely fashion, about thirty minutes in, but insists that the stop had to continue because of Allen's interruption.

The Court cannot conclude that the Defendants' fifty-minute detention of Brewer was reasonable under these circumstances. Even assuming that the first thirty minutes was reasonable in relation to Brewer's excessive window tint citation and Grace's reasonable suspicion of narcotics activity, the twenty additional minutes of Brewer's detention was not reasonably justified. During this extra twenty minutes, after permitting Brewer to return to his car, Grace contacted his sergeant regarding Allen and her phone. Only after that did Grace issue a citation to Brewer, return his identification, and tell Brewer he was free to leave. Defendants' sole justification for Brewer's continued detention was Allen's conduct. Although Brewer admitted to calling Allen to have her come to the stop, that action does not affect the reasonableness of his prolonged detention. Defendants cite no authority to support their position that a prolonged detention can be justified based upon a phone call requesting that someone come to the scene of a traffic stop. Rather, they cite to cases supporting the reasonableness of detaining a suspect to allow for the arrival of a K-9 unit. Here, however, the K-9 unit had already been called off. Furthermore, as discussed below, whether Allen in fact interfered with the stop at all is debatable.

Accordingly, because Allen's conduct appears to be Defendants' only justification for detaining Brewer beyond that reasonable necessary to effectuate the purpose of the initial stop and to investigate Grace's reasonable suspicion of drug activity, the Court will DENY Defendants' Motion as to Brewer's first claim.

**B.     Search of Brewer's Vehicle**

Brewer also claims that Grace violated his Fourth Amendment rights by unlawfully searching his vehicle. The interior of automobiles is protected from unreasonable intrusions by police. *New York v. Class*, 475 U.S. 106, 114−15 (1986). The dash cam video submitted by Defendants of the police encounter supports Plaintiffs' contention that Grace entered Brewer's car three times.

The parties do not provide details about the first instance. The dash cam video suggests that it occurred shortly after Grace instructed Brewer to sit on the sidewalk. Immediately after Grace asked Brewer if he could look in the car and Brewer refused, the video shows Grace walk to the driver-side window and lean in with his head and left arm. Leaning in through a car window may constitute a search. *See United States v. Montes-Ramos*, 347 F. App'x 383 (10th Cir. 2009) (finding that an officer's act of leaning his head two inches into the defendant's vehicle to sniff for marijuana constituted a search); *United States v. Ryles*, 988 F.2d 13, 15 (5th Cir. 1993) (finding that an officer's act of placing his head inside the interior of a vehicle through an open window constituted a search because the officer "intruded inside a space that, under most circumstances, is protected by a legitimate expectation of privacy"). Because Grace has offered no justification for this entry into Brewer's vehicle, the Court will not grant summary judgment as to this claim.

In the second instance, Grace opened the driver-side door and leaned into the car, purportedly to prepare for the arrival of the K-9 unit. (Docket No. 56-3, at 69.) Although Grace could not point to any LMPD policy or procedure supporting his actions, he argues that individuals from the K-9 unit instructed him to prepare a vehicle for inspection by rolling up the windows and leaving one window down "just a little

bit." He also received K-9 training at the police academy. Grace claims to have leaned into Brewer's car, turned the key in the ignition enough to allow him to operate the windows, and then operated the windows using the driver-side door controls. Brewer argues that Grace did not, in fact, manipulate the car's windows. Even if he did, Brewer argues that a dog sniff occurs on the exterior of the item searched. Notably, Thompson testified in his deposition that in a proper drug sniff, no manipulation of the windows is performed. (*See* Docket No. 56-4, at 95-96.) Thompson, like Grace, attended the police academy.

Grace had no affirmative duty to close the windows in preparation for a dog sniff. *See United States v. Sharp*, 689 F.3d 616, 619 (6th Cir. 2012); *United States v. Lyons*, 486 F.3d 367, 373 (8th Cir. 2007). Moreover, the case that Grace cites to show that officers prepare a vehicle for a canine sniff by closing the window is a border search case, which is a much different situation than a traffic stop. *See United States v. Lopez*, 74 F.3d 575, 576 (5th Cir. 1996). The Court has found no other legal authority on permissible preparations for a K-9 unit that involve an officer's entry into a suspect's vehicle. Thus, in the absence of sufficient justification, a reasonable jury could conclude that Grace's second entry into the car was an impermissible violation of Brewer's Fourth Amendment rights.

The third instance occurred just before Brewer was permitted to return to his car. The video shows that Grace again opened the driver-side door and reached into the passenger compartment. An officer is permitted to search the areas of the passenger compartment in which a weapon may be placed or hidden upon reasonable suspicion that the suspect is dangerous or may gain immediate control of a weapon. *E.g.*,

*Michigan v. Long*, 463 U.S. 1032, 1047 (1983); *United States v. Terrell*, 95 F. App'x 746, 747-48 (6th Cir. 2004). And in certain circumstances, an officer can employ "preventative measures to ensure that there [are] no other weapons within [the suspect's] immediate grasp before permitting him to reenter his automobile." *Long*, 463 U.S. at 1051; *see also United States v. Shank*, 543 F.3d 309, 314 (6th Cir. 2008) (applying *Long*, 463 U.S. at 1051).

The Court cannot conclude that Grace's third entry into the vehicle to conduct a *Terry* sweep was justified in this instance. When asked in his deposition why he believed he should search the passenger compartment, Grace pointed only to Brewer's criminal history. (*See* Docket No. 56-3, at 70.) As noted above, criminal history alone is not sufficient to establish reasonable suspicion. *See Joshua*, 341 F.3d at 446 (noting that "past criminal history . . . by itself, does not create a reasonable suspicion that criminal activity is *currently* afoot, which is what the Supreme Court requires"). Moreover, by this point, Grace had frisked Brewer and already had entered the vehicle twice, giving him ample opportunity to satisfy any concern that the passenger compartment might contain a weapon. *See United States v. Townsend*, 305 F.3d 537, 542-45 (6th Cir. 2002) (finding that a suspect's previous arrest for weapons charges "carr[ied] very little weight in providing reasonable suspicion" where the police already had looked in the passenger compartment and frisked the suspect for weapons). Therefore, under the totality of the circumstances, the Court cannot conclude that Grace possessed the requisite reasonable suspicion to conduct a *Terry* sweep of the passenger compartment before allowing Brewer to reenter the vehicle.

For these reasons, the Court will DENY Grace's Motion as to Brewer's unreasonable search claim.

### C. Qualified Immunity

Defendants argue that Grace and Thompson are entitled to qualified immunity on Brewer's unlawful detention and unreasonable search claims. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Feathers v. Aey*, 319 F.3d 843, 847-48 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts employ a two-part inquiry to determine whether a defendant is entitled to qualified immunity: (1) the plaintiff must have alleged sufficient facts to show a constitutional violation; and (2) the right at issue must have been "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 224 (2009). A right is "clearly established" if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right"—that is, if in light of existing law the illegality of the official action is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

With regard to Brewer's unlawful detention claim, Defendants argue again that they detained Brewer only as long as necessary to carry out the purpose of the stop. However, as described above, there is a question of fact precluding summary judgment as to whether the prolonged detention of Brewer was necessary to carry out the purpose of the stop or was otherwise justified. Further, detaining someone without any justification violates a clearly established right to be free from unlawful detention.

Thompson additionally argues that he is entitled to qualified immunity because he was merely covering for Grace and because Brewer has failed to show that Thompson personally violated his constitutional rights. *See Gordon v. Louisville/Jefferson Cnty. Metro Gov't*, 486 F. App'x 534, 541 (6th Cir. 2012) (explaining that "[e]ach defendant's liability is assessed individually, according to his own actions"). Thompson's role in the traffic stop was to watch Brewer and assist in his detention. His action of standing, presumably armed, and watching over Brewer while Brewer was seated on the sidewalk was integral to Brewer's detention. *See Melear v. Spears,* 862 F.2d 1177, 1186 (5th Cir. 1989) (concluding that a backup officer who stood armed at the door of the building while other officers searched performed police functions integral to the search). However, when Grace called off the K-9 unit and instructed Brewer to reenter his vehicle, Thompson's involvement in Brewer's detention ended. There have been no allegations that Thompson's role in the detention extended beyond the permissible scope of the stop. Therefore, Brewer has failed to show that Thompson personally violated his rights during the prolonged stop. As such, the Court finds that Thompson is entitled to qualified immunity on Brewer's illegal detention claim.

Next, the Court will address Grace's three entries into Brewer's vehicle. Absent any justification whatever for the first entry, this claim survives summary judgment. As to Grace's second entry, his purported reason was to prepare the vehicle for the K-9 unit's arrival. But there is nothing in the record to corroborate Grace's averment that he had been instructed by K-9 personnel to enter a vehicle and manipulate the windows in preparation for a dog sniff—indeed, Thompson's deposition testimony directly

contradicts Grace's position.[4]   Even though there may be some dispute as to what procedures were appropriate in this situation, the unreasonable intrusion by police into the interior of an automobile is a violation of a clearly established right.  *See, e.g.*, *Class*, 475 U.S. at 114−15.   Finally, assuming Brewer's version of the facts to be true, Grace's third entry into the vehicle similarly amounts to a violation of the same clearly established right to be free from the unreasonable search of an automobile, of which a reasonable officer in Grace's position would be aware.  Because Brewer has offered sufficient evidence to indicate that Grace's actions were objectively unreasonable in light of that clearly established right, Grace is not entitled to qualified immunity on Brewer's unreasonable search claim.

## II.    Allen's Fourth Amendment Claims

Plaintiff Allen asserts two § 1983 claims against Defendant Grace:  (1) unlawful search and seizure of her cell phone, and (2) excessive use of force.

---

[4] Thompson testified that officers should *not* manipulate the windows in preparation for a K-9 sniff:

> Q.   [T]hey don't put the dog inside the vehicle unless there's some justification --
> A.   Unless there's a . . . unless there's a positive indication . . . from the dog.
> Q.   Okay.   Because without the positive [indication by] the dog, the officer is not permitted to enter the vehicle, is he?
> A.   That's right.
>      . . . .
> Q.   Okay.   Is there any need to put the window up or down before the dog does the sniff of the outside of the vehicle?
> A.   No, sir.
> Q.   You never heard anything . . . like that before, have you?
> A.   You leave it exactly the way it was. . . .
> Q.   You leave the car undisturbed.
> A.   If Mr. Brewer had the window down, the window stays down.   If he had the window cracked, the window stays cracked.

(Docket No. 56-4, at 95-96.)

**A.      Search and Seizure of Allen's Cell Phone**

The Fourth Amendment protects against unreasonable seizures of property. *Hensley v. Gassman*, 693 F.3d 681, 688 (6th Cir. 2012).   A seizure, in this context, involves a "meaningful interference with an individual's possessory interests."   *Id.* (quoting *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992)).   To violate the Fourth Amendment, the seizure must have been objectively unreasonable.   *Id.* (citing *United States v. Place*, 462 U.S. 696, 701 (1983)).

Grace argues that his seizure of Allen's phone was not unreasonable because he only had the phone for ten or fifteen minutes.  He further argues that he gave the phone to Thompson to return to Allen after his sergeant told him to return it.  In fact, however, Grace deleted the video on the phone prior to doing so.  In addition, he had turned off the audio in his police car in violation of LMPD procedures.  A reasonable jury could infer that Grace knew he had done something wrong and that a reasonable officer would neither have seized the phone nor deleted the recorded video.

Grace also argues that he had grounds to seize the phone.  However, the statute he references that Allen was supposedly violating prohibits intentional obstruction, impairment, or hindrance of the performance of a governmental function "by using or threatening to use violence, force, or physical interference." Ky. Rev. Stat. § 519.020(1).  There is no evidence that Allen threatened to use or did use violence or force.   Nor is there any evidence that Allen intended to obstruct, impair, or hinder a governmental operation.  Viewing the facts in favor of the nonmovant, a reasonable jury could find that Allen was not, in fact, physically interfering with or interrupting any police action.  Moreover, although Grace claims he was attempting to ensure officer safety, he does not

claim to have asked her to back away from the stop, nor does he claim to have made any other comments to her regarding officer safety. Instead, he walked up to her and immediately demanded her phone. A reasonable jury could conclude that he was not concerned about safety or Allen's proximity to the traffic stop.

Therefore, because the facts viewed in the light most favorable to Allen show that a constitutional violation occurred, the Court will DENY Grace's Motion relative to her Fourth Amendment illegal search and seizure claim.

**B.      Excessive Force**[5]

Under the Fourth Amendment, free citizens, including bystanders, have a right to be free from a law enforcement officer's use of excessive force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). For Fourth Amendment purposes, a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *see also United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007) (noting that among the factors

---

[5] As noted above, Allen's Amended Complaint asserts her excessive force claim under both the Fourth and Fourteenth Amendments. (*See* Docket No. 51, at 6.) The Court reads Plaintiffs' Response as clarifying that this claim is brought under the Fourth Amendment. (Docket No. 56, at 10.) Indeed, Allen's excessive force claim is more appropriately raised under the Fourth, not the Fourteenth, Amendment. *See Graham v. Connor*, 490 U.S. 386, 388 (1989) (holding that "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard"). But even if Allen's claim were properly brought under the Fourteenth Amendment, it would fail. She must overcome a "substantially higher hurdle" to make a showing of Fourteenth Amendment excessive force. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citing *Darrah v. City of Oak Park,* 255 F.3d 301, 306 (6th Cir. 2001)). Instead of the inquiry into reasonableness under the circumstances, the Fourteenth Amendment requires Allen to show that Grace's conduct "shocks the conscience" so as to amount to an arbitrary exercise of governmental power. *Id.* at 473. In these circumstances, where Grace had the opportunity to deliberate, his actions will shock the conscience only if they were taken with deliberate indifference toward the plaintiff's federally protected rights. *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000). Although the alleged conduct is sufficient to state a claim under the Fourth Amendment, it does not rise to the level of deliberate indifference required by the Fourteenth Amendment.

indicative of a seizure are "some physical touching of the person of the citizen" and "the use of language or tone indicating that compliance with the officer's request might be compelled").

There appears to be no dispute that Allen was "seized" for purposes of triggering the Fourth Amendment's protections. Therefore, the remaining inquiry is whether that seizure was reasonable. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989). In making this determination, courts employ an "objective reasonableness" standard. *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008). "Relevant factors to consider in evaluating what level of force is reasonable include the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (alteration in original) (quoting *Graham*, 490 U.S. at 396). Still, the Sixth Circuit advises that "[t]hese factors are not an exhaustive list, and the ultimate inquiry is whether the seizure was reasonable under the 'totality of the circumstances.'" *Id.* (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006)). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with the benefit of hindsight. *Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 95 (6th Cir. 2012) (citing *Graham*, 490 U.S. at 396). This means that courts must take into account "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 397). "Ultimately, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the

officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (quoting *Graham*, 490 U.S. at 397) (internal quotation marks omitted).

Grace argues that Allen was suspected of intentional obstruction of a government operation. However, Allen was not arrested for or charged with any crime. For the same reasons that this argument failed to overcome Allen's illegal search and seizure claim above, it fails to overcome Allen's excessive force claim here. Similarly, an issue of fact exists as to whether Allen was, as Grace contends, too close for the purposes of officer safety. Grace further argues that Allen actively resisted his efforts to conclude the encounter in a peaceful manner. However, this argument also fails—if Grace's seizure of Allen's phone was illegal, she was certainly not required to give it to him. In sum, the traffic stop had originally been for excessive window tint, and the investigation into narcotics activity already had been terminated; Brewer was sitting on a curb under the undivided supervision of Thompson; there had been no altercation or threat of altercation for the preceding thirty minutes; and Allen, a bystander, stood one and a half car lengths away holding up a cell phone. In view of the totality of the circumstances present, the Court concludes that Allen posed little, if any, threat to Grace or to others. Accordingly, these factors all weigh against finding that Grace's use of force was objectively reasonable.

Accordingly, the Court concludes that the reasonableness of force used by Grace presents a question of fact not suitable for resolution by summary judgment and, therefore, will DENY Grace's Motion relative to Allen's excessive force claim.

### C. Qualified Immunity

Grace also argues that he is entitled to qualified immunity in regard to Allen's Fourth Amendment claims arising from his forcible confiscation of her cell phone.

As discussed above, the facts viewed in the light most favorable to Allen show that a constitutional violation occurred when Grace confiscated Allen's phone and deleted the video she had recorded. Grace focuses his argument for qualified immunity on whether there was a clearly established First Amendment right to record police activity. This argument misses the point. Allen had a clearly established Fourth Amendment right to be free from the unconstitutional seizure of her personal property. And even if a reasonable officer would not have known that the taking of Allen's cell phone violated that right, he certainly would have known that deleting content from that device would be unlawful in these circumstances. Thus, Grace is not entitled to qualified immunity on Allen's unlawful search and seizure claim.

Furthermore, assuming Allen's version of the facts to be true, Grace's actions show a violation of the clearly established right to be free from excessive force, which a reasonable officer would be aware of at the time of the events in question. Because Allen has offered sufficient evidence to indicate that Grace's actions were objectively unreasonable in light of that clearly established right, Grace is not entitled to qualified immunity on Allen's Fourth Amendment excessive force claim.

For these reasons, the Court concludes that Grace is not entitled to qualified immunity on Allen's Fourth Amendment claims.

### III.    Plaintiffs' State Law Claims

Plaintiffs also advance state law claims of assault and battery and for wrongful arrest.  (*See* Docket No. 51, at 6.)  Although not clear from their Amended Complaint, the Court infers that the wrongful arrest claim is asserted by Brewer and the assault and battery claim is asserted by Allen.  Defendants purport to move for summary judgment on all of Plaintiffs' claims but fail to address these state law torts claims.  As a practical matter, it appears to the Court that these state law claims would likely be subsumed by Plaintiffs' § 1983 claims.    Regardless, at this juncture the Court will DENY Defendants' Motion for Summary Judgment relative to Plaintiffs' state law tort claims, as well as to their claim for punitive damages.

## CONCLUSION

Having considered the parties' respective arguments and being otherwise sufficiently advised, for the foregoing reasons;

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment, (Docket No. 53), is GRANTED IN PART and DENIED IN PART.  Defendants' Motion is GRANTED as to Brewer's claim that the initial traffic stop was not supported by probable cause.  Defendants' Motion also is GRANTED as to Brewer's unlawful detention claim against Defendant Thompson.    Defendants' Motion is DENIED in all other respects.

Date:

cc:      Counsel